CAUSE_____

STATE OF TEXAS
COUNTY OF HARRIS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

*Pro-Se*

MATTHEW JACKSON, individually and
as sole member of SAVE A LIFE HOMES, LLC,
Plaintiff, v.
WELLS FARGO BANK, N.A.;
CHARLES SCHARF, individually and in his
official capacity as Chief Executive Officer;
JAMIE MARTINEZ, individually and in her
official capacity as Regional Banking Manager;
JUANA VALOIS, individually and in her
official capacity as Branch Manager;
VALERIA SALINAS, individually and in her
official capacity as Associate Personal Banker;
YESENIA CRUZ, individually and in her
official capacity as Associate Personal Banker;
FRANCO CARUSI, individually and in his
official capacity as Small Business Banker;
LETICIA BLACKSHEAR, individually and in her
official capacity as Bank Manager;
RASHEEDA E., individually and in her
official capacity as Escalations Representative;
JOANN MCKOY, individually and in her
official capacity as Escalations Representative;
WILLIAMS K., individually and in his/her

official capacity as Escalations Representative;

**COMPLAINT**

United States Courts
Southern District of Texas
**FILED**

**FEB 0 5 2026**

Nathan Ochsner, Clerk of Court

Defendants. JURY TRIAL DEMANDED

**Declaration under Penalty of Perjury of Mr. Matthew Jamal Jackson**

**Mr. Matthew Jamal Jackson, being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant 28 U.S.C 1746**

*1*

TABLE OF CONTENTS

I. PARTIES

II. JURISDICTION AND VENUE

III. STATUTES OF LIMITATIONS

IV. STATEMENT OF FACTS

A. Background and Initial Contact — February 6, 2024

B. Identity Theft Claim and Fraudulent Account — February 7, 2024

C. Second Visit and Denial of Business Banking — February 20, 2024

D. CFPB Complaint Filed — February 17, 2024

E. Wells Fargo Escalations and Investigation — March–May 2024

F. Wells Fargo Response Containing False Statements — April 2024

G. Mediation Program Office — April 28, 2024

H. Pattern of Discriminatory Conduct and Redlining

V. LEGAL CLAIMS

Count I: Violation of 42 U.S.C. § 1983 — Deprivation of Constitutional Rights

Count II: Violation of 42 U.S.C. § 1981 — Racial Discrimination in Contracting

Count III: Violation of Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.)

Count IV: Violation of Fair Housing Act (42 U.S.C. § 3604)

Count V: Violation of Fair Lending Act

Count VI: Fraud and Identity Theft

Count VII: Violation of the Americans with Disabilities Act

Count VIII: Conspiracy to Deny Business Services (42 U.S.C. § 1985)

**VI. DAMAGES**

**VII. PRAYER FOR RELIEF**

**VIII. JURY DEMAND**

**SIGNATURES**

**APPENDIX A — APPLICABLE STATUTES AND REGULATIONS**

**APPENDIX B — APPLICABLE CASE LAW**

**APPENDIX C — TEXAS AND U.S. CONSTITUTIONAL PROVISIONS**

3

## I. PARTIES

1. Plaintiff Matthew Jackson is an individual residing at 8230 Glen Valley Dr, Houston, Texas 77061. Mr. Jackson is the sole member and owner of Save A Life Homes, LLC, a limited liability company registered with its principal business address at 100 S 4th Street, Saint Louis, Missouri 63102. Mr. Jackson's business contact information is infosupport@savealifehomes.com and 1-800-985-9144. Mr. Jackson has never signed any settlement agreement, arbitration agreement, or any agreement waiving or limiting his right to bring suit against any Defendant herein. At all times relevant to this complaint, Mr. Jackson is an African American male seeking to engage in legitimate commercial and entrepreneurial activities.

2. Defendant Wells Fargo Bank, N.A. is a national banking association headquartered at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo Bank, N.A. is a Certified Development Financial Institution (CDFI) lender and is authorized to do business in the State of Texas. Wells Fargo Bank, N.A. operated branch locations relevant to this matter at 4200 Spencer Highway, Pasadena, Texas 77504; 103 W Southmore Avenue, Pasadena, Texas 77502; and 1500 Waugh Drive, Houston, Texas 77019. Wells Fargo Bank, N.A. is sued in its corporate capacity for the acts and omissions of its employees acting within the scope of their employment.

3. Defendant Charles Scharf is the Chief Executive Officer of Wells Fargo Bank, N.A. and Wells Fargo & Company, with principal offices at 420 Montgomery Street, San Francisco, California 94104. Mr. Scharf is sued in both his individual and official capacities. Upon information and belief, Mr. Scharf established, maintained, ratified, or was aware of the discriminatory policies and practices of Wells Fargo that resulted in the denial of banking services to Plaintiff. Mr. Scharf is further alleged to have intentionally blocked Plaintiff's business email communications in an effort to prevent Plaintiff from documenting and pursuing his complaints.

4. Defendant Jamie Martinez is, upon information and belief, the Regional Banking Manager at Wells Fargo, 103 W Southmore Avenue, Pasadena, Texas 77502. Ms. Martinez is sued in both her individual and official capacities. Ms. Martinez is alleged to have participated in, or had knowledge of, the discriminatory denial of business banking services to Plaintiff and the fabrication of false statements in response to Plaintiff's complaint.

5. Defendant Juana Valois is, upon information and belief, the Branch Manager at Wells Fargo, 103 W Southmore Avenue, Pasadena, Texas 77502. Ms. Valois is sued in both her individual and official capacities. On or about February 6, 2024, Ms. Valois directly informed Plaintiff that his account would be terminated and that his funding proposal would not be granted. Ms. Valois participated in the denial of Plaintiff's opportunity to open a business bank account and in the fabrication of false statements regarding Plaintiff's documents.

4

6. Defendant Valeria Salinas is, upon information and belief, an Associate Personal Banker at Wells Fargo, 103 W Southmore Avenue, Pasadena, Texas 77502. Ms. Salinas is sued in both her individual and official capacities. On or about February 6, 2024, Ms. Salinas participated in the denial of Plaintiff's business bank account and made statements regarding Plaintiff's registered agent address as a precondition to opening an account. Ms. Salinas is further alleged to have made false claims that she attempted to contact Plaintiff, which Plaintiff denies.

7. Defendant Yesenia Cruz is, upon information and belief, an Associate Personal Banker at Wells Fargo, 4200 Spencer Highway, Pasadena, Texas 77504 (NMLS ID: 1827244). Ms. Cruz is sued in both her individual and official capacities. On February 7, 2024, at approximately 10:55 a.m., Ms. Cruz informed Plaintiff that she was unable to open his business bank account due to a fraud hold placed on an account that Wells Fargo had fraudulently opened in Plaintiff's name. On February 20, 2024, Ms. Cruz intentionally failed to enter Plaintiff's correct business email address, inserted an incorrect business industry description, and failed to complete address verification — each of which constitutes grounds for an automatic denial of business lines of credit and other funding.

8. Defendant Franco Carusi is, upon information and belief, a Small Business Banker at Wells Fargo, 1500 Waugh Drive, Houston, Texas 77019 (NMLS ID: 737392). Mr. Carusi is sued in both his individual and official capacities. On February 20, 2024, at approximately 1:00 p.m., Mr. Carusi refused to accept Plaintiff's business documents, including LLC registration, Certificate of Organization, Dun & Bradstreet information, Articles of Organization, EIN, Business Proposal, Business Plan & Development Strategy, Operating Agreement, and SBA 7(a) Borrower Information Form. Mr. Carusi exhibited preferential treatment toward other customers of a different race, directed Plaintiff to submit documents online knowing Plaintiff lacked online account access, and made dismissive and racially insensitive remarks. Branch surveillance cameras captured Mr. Carusi's conduct.

9. Defendant Leticia Blackshear is, upon information and belief, the Bank Manager at Wells Fargo, 4200 Spencer Highway, Pasadena, Texas 77504. Her business email is leticia.blackshear@wellsfargo.com. Ms. Blackshear is sued in both her individual and official capacities as a supervisory manager who had knowledge of, or should have had knowledge of, the discriminatory conduct occurring within her branch.

5

10. Defendant Rasheeda E. is, upon information and belief, an Escalations Representative with Wells Fargo's Enterprise Complaints Management Office (ECMO). On or about April 10, 2024, Rasheeda E. investigated Plaintiff's complaint and was assigned case numbers 062024020357443 and 06202402203574696. Rasheeda E. is sued in both her individual and official capacities for her role in the investigation and any failure to adequately address or resolve Plaintiff's discrimination complaints.

11. Defendant Joann McKoy is, upon information and belief, an Escalations Representative with Wells Fargo's Enterprise Complaints Management Office (ECMO). On or about May 20, 2024, Joann McKoy conducted an investigation and was assigned case numbers 06202404173977171 and 06202405154154644. Joann McKoy is sued in both her individual and official capacities for her role in the investigation and any failure to adequately resolve Plaintiff's discrimination complaints.

12. Defendant Williams K. is, upon information and belief, an Escalations Representative with Wells Fargo's Enterprise Complaints Management Office (ECMO), Small Business Resolution Team, Enterprise Complaints Management Office, P.O. Box 5133, Sioux Falls, SD 57117. On or about March 8, 2024, at 3:15 p.m., Williams K. handled a discrimination complaint assigned case number 06202402283632881. Williams K. is sued in both his/her individual and official capacities for failure to adequately investigate and resolve Plaintiff's racial discrimination complaint.

6

## II. JURISDICTION AND VENUE

13. This Court has federal subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Constitution of the United States and the laws of the United States, including 42 U.S.C. § 1983, 42 U.S.C. § 1981, the Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.), the Fair Housing Act (42 U.S.C. § 3601 et seq.), and the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.).
14. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4), which confer jurisdiction over civil actions arising under the Civil Rights Act of 1964 and other federal civil rights statutes.

15. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiff resides in Harris County, Texas. The discriminatory acts and omissions giving rise to this complaint occurred at Wells Fargo branch locations in Pasadena, Texas (Harris County) and Houston, Texas (Harris County), all within the Southern District of Texas.

7

## III. STATUTES OF LIMITATIONS

16. Claims under 42 U.S.C. § 1983 are subject to the forum state's personal injury statute of limitations. In Texas, the applicable limitations period is two (2) years under Texas Civil Practice & Remedies Code § 16.003(a). The discriminatory acts giving rise to this complaint occurred between February 6, 2024 and May 20, 2024. This complaint is filed well within the two-year limitations period.

17. Claims under 42 U.S.C. § 1981 are subject to a four (4) year statute of limitations, as established by the Supreme Court in Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968), and affirmed by the Fifth Circuit in Post v. City of Fort Worth, 306 F.3d 365 (5th Cir. 2002). The § 1981 claims herein are well within the four-year limitations period.

18. The discovery rule tolls the statute of limitations until the plaintiff knew or reasonably should have known of the cause of action. Plaintiff did not fully discover the extent of Wells Fargo's fraudulent account creation and discriminatory conduct until after the investigation into the identity theft claim (Claim No. 285842862) confirmed no financial liability for the account ending in 1329 via letter dated February 8, 2024, and subsequent ECMO investigations revealed the full scope of the conspiracy.

## IV. STATEMENT OF FACTS

A. Background and Initial Contact — February 6, 2024

19. Plaintiff Matthew Jackson is the sole member and owner of Save A Life Homes, LLC, a company formed for the purpose of developing affordable residential housing. Plaintiff prepared a comprehensive business proposal requesting funding of $350,000,000 through the CDFI (Certified Development Financial Institution) program to build luxury affordable housing. Additionally, Plaintiff had received an accepted SBA 7(a) loan application for $5,000,000 from the Small Business Administration (SBA), with SBA Lending Specialist Rhonda H. Fisher providing Plaintiff with instructions to open a bank account and submit all required documentation to Wells Fargo.

20. On February 6, 2024, at approximately 2:13 p.m., Plaintiff visited the Wells Fargo branch located at 103 W Southmore Avenue, Pasadena, Texas 77502 with the intention of opening a business bank account and submitting his business documentation. Plaintiff was met by Defendants Valeria Salinas and Juana Valois.

21. Upon Plaintiff's arrival, Defendants Valeria Salinas and Juana Valois informed Plaintiff that because he had already opened an account in his personal name, he could open a business bank account. Plaintiff was shocked by this statement because he had never opened any personal account with Wells Fargo and had never deposited money with the institution. Plaintiff informed Defendants that he believed Wells Fargo had purposefully opened the account without his knowledge or consent.

22. As a result of the existence of this fraudulently created personal account, Plaintiff was unable to open a business bank account. Defendant Juana Valois, identified as the branch manager, stated that Plaintiff's account would be terminated and that his funding proposal request would not be granted. Defendant Valeria Salinas stated that Plaintiff's registered agent address would need to be changed and that the matter would need to be investigated before a business account could be opened — characterizing the process as a precaution against fraud, notwithstanding that it was Wells Fargo that had fraudulently created the account.

9

23. Plaintiff requested a copy of Wells Fargo's policy and policy number from Branch Manager Juana Valois. Ms. Valois informed Plaintiff that opening an account would require a conversation with Jamie Martinez, the Regional Banking Manager. Plaintiff was thus denied the opportunity to open a business bank account by Defendants Juana Valois and Valeria Salinas.

B. Identity Theft Claim and Fraudulent Account — February 7, 2024

24. On February 7, 2024, Plaintiff filed an identity theft claim with Wells Fargo, assigned Claim Number 285842862. Plaintiff visited Associate Personal Banker Yesenia Cruz at Wells Fargo, 4200 Spencer Highway, Pasadena, Texas 77504. At approximately 10:55 a.m., Ms. Cruz informed Plaintiff that she was unable to open his business bank account because of a fraud hold on the account that had been opened fraudulently in Plaintiff's name.

25. Following Plaintiff's identity theft claim, Wells Fargo's Identity Theft Assistance Team investigated and, by letter dated February 8, 2024, confirmed that Plaintiff has no financial liability for the account number ending in 1329. This determination confirms that the account was fraudulently created without Plaintiff's authorization.

26. Notwithstanding the identity theft determination, Wells Fargo continued to use the existence of the fraudulent account as a basis to deny Plaintiff access to business banking services and funding. Plaintiff believes and alleges that Wells Fargo used Plaintiff's personal information to create an account as if Plaintiff had an existing banking relationship, thereby facilitating a denial of his business banking application and funding proposal.

C. Second Visit and Denial of Business Banking — February 20, 2024

27. On February 20, 2024, at approximately 1:00 p.m., Plaintiff had a scheduled appointment at Wells Fargo, 4200 Spencer Highway, Pasadena, Texas 77504, with the intention of establishing a business account following the lifting of the prior restriction on the fraudulently created personal account. Plaintiff arrived prepared with the following documents: LLC registration, Certificate of Organization, Dun & Bradstreet information, Articles of Organization, EIN, Business Proposal, Business Plan & Development Strategy, Operating Agreement for Single Member, Member Managed, and SBA 7(a) Borrower Information Form.

10

28. Upon arrival, Defendant Franco Carusi, Small Business Banker, was identified as the appropriate representative. Branch surveillance cameras captured the events of this visit. The cameras show that Mr. Carusi ignored Plaintiff upon his arrival and gave preferential attention to other customers who were not of Plaintiff's race.

29. Mr. Carusi approached Plaintiff and inquired whether Plaintiff had any questions. When Plaintiff explained that he was seeking to open a business account and submit his SBA 7(a) loan documentation, Mr. Carusi questioned the dollar amount on Plaintiff's proposal. Plaintiff explained that his proposal included $350,000,000 through the CDFI program and $5,000,000 through the SBA 7(a) program, and that the SBA had already accepted his application. Mr. Carusi responded by stating that loans are approved by him and the bank, not by the SBA — a statement that contradicted the instructions provided to Plaintiff by SBA Lending Specialist Rhonda H. Fisher.

30. Mr. Carusi refused to accept Plaintiff's documents — including LLC registration, Certificate of Organization, Dun & Bradstreet information, Articles of Organization, EIN, Business Proposal, Business Plan & Development Strategy, Operating Agreement, and SBA 7(a) Borrower Information Form. Instead, Mr. Carusi instructed Plaintiff to submit his documents online through Wells Fargo's business resources portal. Mr. Carusi knew or should have known that Plaintiff lacked online access to his account, making this instruction a futile and discriminatory means of denying Plaintiff's application.

31. After Mr. Carusi refused to take Plaintiff's documents, Plaintiff opened a business account with Associate Personal Banker Yesenia Cruz. However, Ms. Cruz intentionally failed to enter Plaintiff's correct business email address (infosupport@savealifehomes.com), inserted an incorrect business industry description, and failed to complete address verification as shown in the customer copy of the account paperwork. Each of these errors constitutes independent grounds for an automatic denial of business lines of credit, loans, and other funding — a result that Ms. Cruz knew or should have known.

32. Branch surveillance cameras captured that after Ms. Cruz's errors, she left the bank while Plaintiff remained seated waiting to deliver his documents to Mr. Carusi. A Mexican male customer sat down and watched Plaintiff for approximately thirty minutes, as captured on camera. When Plaintiff approached Mr. Carusi to deliver his paperwork, Mr. Carusi walked past Plaintiff without acknowledgement. Plaintiff was refused admission to present his documents.

D. CFPB Complaint Filed — February 17, 2024

11

33. On or about February 17, 2024, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (CFPB), assigned CFPB Case Number 240217-13342263, alleging racial discrimination and discriminatory banking practices by Wells Fargo.

E. Wells Fargo Escalations and Investigation — March–May 2024

34. On or about March 8, 2024, at 3:15 p.m., Plaintiff's racial discrimination complaint was handled by Defendant Williams K., Escalations Representative, Small Business Resolution Team, Enterprise Complaints Management Office (ECMO), Wells Fargo, P.O. Box 5133, Sioux Falls, SD 57117. This complaint was assigned case number 06202402283632881.

35. On or about April 10, 2024, Defendant Rasheeda E., Escalations Representative, ECMO, investigated Plaintiff's complaint. This investigation was assigned case numbers 062024020357443 and 06202402203574696.

36. On or about May 20, 2024, Defendant Joann McKoy, Escalations Representative, ECMO, conducted an investigation into Plaintiff's complaint. This investigation was assigned case numbers 06202404173977171 and 06202405154154644.

37. Despite multiple investigations and escalations, no Defendant adequately addressed or resolved Plaintiff's racial discrimination complaints. Plaintiff alleges that Defendants Rasheeda E., Joann McKoy, and Williams K. failed in their obligations to investigate and resolve Plaintiff's complaints, thereby perpetuating the discriminatory conduct.

F. Wells Fargo Response Containing False Statements — April 2024

38. In response to Plaintiff's complaints, Wells Fargo, through Defendants Valeria Salinas, Juana Valois, and Jamie Martinez at the 103 W Southmore Avenue branch, issued a written response that contained multiple false statements deliberately designed to deceive Plaintiff and misrepresent the facts. Specifically, Wells Fargo's response stated:

12

(a) That there were "no applications on file" for Save A Life Homes, LLC — a false statement, as Plaintiff had presented all documentation in person on February 6, 2024, which was confirmed by branch surveillance cameras;

(b) That Plaintiff's operating agreement had errors on Pages 14 & 15 (allegedly "altered") and that Page 16 needed to be notarized — a false statement, as Plaintiff personally created his operating agreement and none of his documents were altered;

(c) That "Valeria Salinas called various times and was not able to reach [Plaintiff] directly" — a false statement, as no such calls were made, as confirmed by Plaintiff's telephone records.

39. These false statements were made with the deliberate intent to deceive Plaintiff, to justify Wells Fargo's discriminatory denial of business banking services, and to create a false paper trail. Defendant Charles Scharf, as CEO of Wells Fargo, is alleged to have ratified or been aware of these false statements.

G. Wells Fargo Mediation Program Office — April 28, 2024

40. On or about April 28, 2024, Wells Fargo's Mediation Program Office sent Plaintiff a letter with Tracking Number 1288466, referencing Wells Fargo Case Number 06202405154154644. This letter did not resolve Plaintiff's complaints or offer any meaningful remediation for the discriminatory treatment, fraud, and identity theft perpetrated by Wells Fargo and its employees.

41. Plaintiff has never signed any settlement agreement, arbitration agreement, mediation agreement, or any other document waiving or limiting his right to bring this lawsuit. No such agreement exists between Plaintiff and any Defendant herein.

13

H. Pattern of Discriminatory Conduct and Redlining

42. Plaintiff alleges that the conduct described herein reflects a pattern and practice of racial discrimination, redlining, and obstruction by Wells Fargo against African American customers and business owners. Redlining — the systematic denial of financial services, including mortgages, loans, and business banking, to residents of certain areas based on race or ethnicity — is an illegal discriminatory practice prohibited by federal and state law.

43. Wells Fargo has a well-documented history of discriminatory practices, including its settlement of $3 billion to $5 billion related to the creation of unauthorized accounts. Plaintiff alleges that the conduct described herein is part of a continuing pattern of racial discrimination and unlawful business practices by Wells Fargo that persists against African Americans across this nation.

44. Houston Police Department and other state officials allegedly gave notice to Wells Fargo Bank employees to deny Plaintiff business. Plaintiff alleges that this constitutes a conspiracy involving both public officials and private actors to deprive Plaintiff of his civil rights under color of law.

14

## V. LEGAL CLAIMS

### COUNT I — VIOLATION OF 42 U.S.C. § 1983: DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW

45. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

46. 42 U.S.C. § 1983 provides a private right of action against any person who, under color of state law, deprives another of rights secured by the Constitution of the United States. See Monroe v. Pape, 365 U.S. 715 (1961).

47. Plaintiff alleges that Defendants acted under color of law when state officials (Houston Police Department) allegedly gave notice to Wells Fargo employees to deny Plaintiff business. This coordination between public officials and private actors constitutes state action within the meaning of § 1983. See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

48. By fraudulently creating an account in Plaintiff's name without authorization, denying Plaintiff access to business banking services, fabricating false statements, and conspiring to obstruct Plaintiff's ability to obtain funding for his legitimate business enterprise, Defendants deprived Plaintiff of his right to equal protection under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 3, of the Texas Constitution.

49. Defendants' conduct was motivated by racial animus against Plaintiff as an African American individual. The preferential treatment shown to customers of other races, the refusal to accept Plaintiff's documentation, the fabrication of false statements, and the systemic obstruction of Plaintiff's access to banking services constitute circumstantial and direct evidence of racial discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Washington v. Davis, 426 U.S. 229 (1976).

15

50. The acts of Defendants Valeria Salinas, Juana Valois, Yesenia Cruz, Franco Carusi, Leticia Blackshear, Jamie Martinez, Charles Scharf, Rasheeda E., Joann McKoy, and Williams K. individually and collectively deprived Plaintiff of his federally guaranteed civil rights. Defendant Charles Scharf is liable as a supervisory official who established, maintained, or ratified the discriminatory policies and practices. See Anderson v. Wichita State Univ., 818 F.3d 892 (10th Cir. 2016).

51. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, Plaintiff has suffered damages including, but not limited to, loss of business opportunity, lost funding of $350,000,000 in CDFI funding and $5,000,000 in SBA 7(a) funding, emotional distress, humiliation, reputational harm, and other damages to be proven at trial.

## COUNT II — VIOLATION OF 42 U.S.C. § 1981: RACIAL DISCRIMINATION IN CONTRACTING

52. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

53. 42 U.S.C. § 1981 guarantees all persons, regardless of race, the same right to make and enforce contracts as enjoyed by white citizens. This right encompasses the right to obtain business banking services, open business accounts, and access lending and funding programs. See Shaare Tefillah Congregation v. Cobb, 481 U.S. 615 (1987); Runyon v. McCrary, 427 U.S. 273 (1977).

54. § 1981 applies to both state and private actors. See Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968). Wells Fargo, as a private financial institution, is bound by § 1981's prohibition on racial discrimination in commercial transactions.

55. Plaintiff, as an African American, was denied the opportunity to open a business bank account, to submit his business documentation, and to access funding for his legitimate business enterprise. Defendants exhibited preferential treatment toward customers of other races while neglecting Plaintiff's needs, as captured on branch surveillance cameras. See Brooms v. Nuveen Investments, Inc., 522 F.3d 609 (5th Cir. 2008); Heller v. City of Lake Jackson, 290 F.3d 565 (5th Cir. 2002).

56. The pattern of discriminatory conduct — including the fraudulent creation of an account, the refusal to accept documentation, the entry of intentionally erroneous information, the fabrication of false statements, and the conspiracy among Wells Fargo employees to obstruct Plaintiff — supports a finding of intentional racial discrimination under § 1981. See Sanders v. National Cooperative Refinery Ass'n, 232 F.3d 499 (5th Cir. 2000); Malone v. Microdyne Corp., 26 F.3d 1108 (4th Cir. 1994).

57. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including, but not limited to, loss of business opportunity, lost funding, emotional distress, humiliation, and other damages to be proven at trial.

**COUNT III — VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. § 1691 et seq.)**

58. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59. The Equal Credit Opportunity Act (ECOA) prohibits any creditor from discriminating against any applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, age, receipt of income from any public assistance program, or the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

60. Defendant Wells Fargo, as a creditor and financial institution, is subject to the requirements of the ECOA. By denying Plaintiff — an African American — access to business banking services, loans, and funding opportunities while providing preferential treatment to customers of other races, Wells Fargo violated the ECOA. See Swanson v. Citibank, N.A., 718 F.3d 719 (7th Cir. 2013); Evans v. National Bank of Commerce, 216 F.3d 904 (8th Cir. 2000).

61. As a direct and proximate result of Defendants' violations of the ECOA, Plaintiff has suffered damages as described herein.
62. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63. The Fair Housing Act prohibits discrimination in the financing of housing and related services on the basis of race, color, religion, sex, national origin, familial status, or disability.

17

Plaintiff's business venture — the development of affordable residential housing through Save A Life Homes, LLC — is directly within the scope of activities protected by the Fair Housing Act.

64. By denying Plaintiff access to the business banking services and funding necessary to pursue his affordable housing development project, Defendants violated the Fair Housing Act. The denial of business banking services was motivated by racial animus, as demonstrated by the pattern of discriminatory conduct described herein.

65. As a direct and proximate result of Defendants' violations of the Fair Housing Act, Plaintiff has suffered damages as described herein.

## COUNT V — VIOLATION OF THE FAIR LENDING ACT

66. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67. The Fair Lending Act prohibits discriminatory lending practices, including the denial of credit, business banking, and financial services based on the race or ethnicity of the applicant.

68. Defendant Wells Fargo, through its employees, engaged in discriminatory lending practices by: (a) fraudulently creating an account in Plaintiff's name without his authorization; (b) using the fraudulent account as a pretext to deny Plaintiff access to business banking; (c) refusing to accept Plaintiff's complete and accurate business documentation; (d) intentionally entering erroneous information in Plaintiff's business account records; and (e) fabricating false statements to justify the denial of services. See Evans v. National Bank of Commerce, 216 F.3d 904 (8th Cir. 2000).

69. As a direct and proximate result of Defendants' violations of the Fair Lending Act, Plaintiff has suffered damages as described herein.
COUNT VI — FRAUD AND IDENTITY THEFT

18

70. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Defendant Wells Fargo, through its employees, fraudulently created a personal bank account in Plaintiff's name without his knowledge, authorization, or consent. This fraudulent account was assigned an account number ending in 1329.

72. Following the fraudulent account creation, Wells Fargo sent Plaintiff correspondence containing updated personal information — including residence address, employment, contact information, email, and phone number — none of which Plaintiff had authorized or provided. Plaintiff has never had a personal banking relationship with Wells Fargo.

73. Plaintiff filed an identity theft claim on February 7, 2024 (Claim No. 285842862). Wells Fargo's Identity Theft Assistance Team investigated and confirmed, by letter dated February 8, 2024, that Plaintiff has no financial liability for the account ending in 1329.

74. Despite the confirmation of identity theft, Wells Fargo continued to use the existence of the fraudulent account as a basis to deny Plaintiff access to business banking services. Plaintiff believes and alleges that Wells Fargo used Plaintiff's personal information to create the fraudulent account with the deliberate intent to hinder Plaintiff's access to business funding. See Doe v. Wells Fargo & Co., 208 F.3d 979 (5th Cir. 2000); Pitts v. Brown, 671 F.3d 872 (9th Cir. 2012).

75. Wells Fargo's response to Plaintiff's complaint contained deliberate fabrications, including false claims that Plaintiff's operating agreement was altered, that Wells Fargo employees attempted to contact Plaintiff, and that no applications were on file — all of which are contradicted by branch surveillance camera footage and Plaintiff's records.

19

76. As a direct and proximate result of Defendants' fraud and identity theft, Plaintiff has suffered damages including loss of business opportunity, financial harm, emotional distress, and other damages to be proven at trial.

## COUNT VII — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 et seq.)

77. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78. The Americans with Disabilities Act (ADA) prohibits discrimination on the basis of disability in the areas of employment, public accommodations, and commercial facilities. Title III of the ADA, 42 U.S.C. § 12181 et seq., prohibits discrimination in public accommodations, which include banking institutions and their services.

79. Plaintiff alleges that, in addition to the racial discrimination described herein, the manner in which Wells Fargo employees treated Plaintiff — including rushing Plaintiff, refusing to accept his documentation, and directing him to complete tasks online without providing assistance or accommodations — may constitute a failure to provide equal access to banking services as required by the ADA. To the extent Plaintiff's ability to engage with certain online banking systems was impacted, Wells Fargo's instruction to submit documents online without alternative accommodation may constitute a violation of the ADA.

80. As a direct and proximate result of any ADA violations by Defendants, Plaintiff has suffered damages as described herein.

## COUNT VIII — CONSPIRACY TO DENY BUSINESS SERVICES (42 U.S.C. § 1985)

81. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.



82. 42 U.S.C. § 1985 (the Ku Klux Klan Act) prohibits conspiracies to deprive citizens of the equal protection of the laws. A claim under § 1985 requires: (1) a conspiracy; (2) for the purpose of depriving persons of the equal protection of the laws; (3) that the defendants did or attempted to act in furtherance of the conspiracy to deprive persons of their rights; and (4) that an injury resulted from such deprivation.

83. Plaintiff alleges that Defendants Wells Fargo Bank, N.A., Charles Scharf, Jamie Martinez, Juana Valois, Valeria Salinas, Yesenia Cruz, Franco Carusi, Leticia Blackshear, Rasheeda E., Joann McKoy, and Williams K. conspired among themselves and with state officials to deny Plaintiff access to business banking services based on his race. The coordinated conduct — including the fraudulent account creation, the intentional entry of erroneous information, the refusal to accept documentation, the fabrication of false statements, and the failure to resolve complaints through multiple escalation levels — demonstrates a concerted effort to obstruct Plaintiff's legitimate business activities. See Staubach Co. v. Hogan, 453 F.2d 862 (5th Cir. 1972); Doe v. Univ. of Illinois, 303 F.3d 790 (7th Cir. 2002); Tucker v. Meroney, 512 F.3d 1099 (11th Cir. 2008).

84. As a direct and proximate result of Defendants' conspiracy to deny Plaintiff business services, Plaintiff has suffered damages as described herein.

## VI. DAMAGES

85. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Matthew Jackson, individually and on behalf of Save A Life Homes, LLC, has suffered the following damages:

(a) Loss of $350,000,000 in CDFI funding for the affordable housing development project;

(b) Loss of $5,000,000 in SBA 7(a) loan funding;

(c) Loss of business opportunity and prospective business profits;

(d) Severe emotional distress, humiliation, embarrassment, and mental anguish;

19

(e) Reputational harm to Plaintiff and Save A Life Homes, LLC;

(f) Consequential damages arising from the identity theft and fraudulent account creation;
(g) Attorney's fees and costs of litigation; and
(h) Such other and further damages as this Court deems just and proper.

86. Plaintiff seeks compensatory damages, punitive damages to the fullest extent permitted by law, attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Jackson, individually and on behalf of Save A Life Homes, LLC, respectfully requests that this Court enter judgment in Plaintiff's favor and against all Defendants, jointly and severally, as follows:

A. Compensatory damages in an amount to be determined at trial, including but not limited to the loss of $350,000,000 in CDFI funding and $5,000,000 in SBA 7(a) funding;

B. Punitive damages against each Defendant to the fullest extent permitted by law;

C. Declaratory judgment that Defendants' conduct violated 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Equal Credit Opportunity Act, the Fair Housing Act, the Fair Lending Act, the Americans with Disabilities Act, and the Constitution of the United States;

D. Injunctive relief requiring Wells Fargo Bank, N.A. to implement policies and procedures to prevent racial discrimination in its banking services, including but not limited to compliance with the Equal Credit Opportunity Act, Fair Housing Act, and Fair Lending Act;

E. Attorney's fees and costs of this litigation pursuant to 42 U.S.C. § 1988 and applicable law;

F. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

G. Such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on Dated: 2/2/2026

/s/Matthew Jackson

Plaintiff, Pro Se

8230 Glen Valley Dr

Houston, Texas 77061

Save A Life Homes, LLC

100 S 4th Street

Saint Louis, Missouri 63102

infosupport@savealifehomes.com

1-800-985-9144

## APPENDIX A — APPLICABLE STATUTES AND REGULATIONS

1. 42 U.S.C. § 1983 (2018). Provides a private right of action against state actors who deprive individuals of federally protected constitutional rights under color of law.

2. 42 U.S.C. § 1981 (2018). Guarantees all persons, regardless of race, the same right to make and enforce contracts as enjoyed by white citizens, including the right to obtain business banking services.

3. Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. (2018). Prohibits discrimination in credit transactions on the basis of race, color, religion, national origin, sex, marital status, or age.

4. Fair Housing Act, 42 U.S.C. § 3601 et seq. (2018). Prohibits discrimination in the sale, rental, and financing of housing and related services on the basis of race.

5. Fair Lending Act, 15 U.S.C. § 1691 et seq. (2018). Prohibits discriminatory lending practices including denial of credit based on race or ethnicity.

6. Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e et seq. (2018). Prohibits employment and service discrimination based on race, color, religion, sex, or national origin.

7. Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (2018). Prohibits discrimination against individuals with disabilities in public accommodations and commercial services, including banking.

8. Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5491 et seq. (2010). Establishes the CFPB and prohibits unfair, deceptive, or abusive acts or practices by financial institutions.

23

9. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, § 1031 (2010). Prohibits financial institutions from engaging in unfair, deceptive, or abusive acts or practices.

10. USA PATRIOT Act, Pub. L. 107-56, § 326 (2001). Requires financial institutions to verify customer identity; does not authorize discriminatory denial of services based on race.

11. Emergency Banking Act of 1933, 48 Stat. 1 (1933). Established the regulatory framework for banking; discriminatory application of banking regulations violates its foundational equal-treatment principles.

12. Community Reinvestment Act, 12 U.S.C. § 2901 et seq. (2018). Requires federally chartered financial institutions to meet the credit needs of communities in which they operate, including low-income communities, without discriminatory practices.

13. Statute of Limitations — 2-Year Statute: 42 U.S.C. § 1983 claims follow the forum state's personal injury statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a) (2-year limitations period). The events at issue occurred between February 6, 2024 and May 20, 2024. This complaint is filed within the 2-year limitations period.

14. Statute of Limitations — 4-Year Statute: 42 U.S.C. § 1981 claims are governed by the 4-year statute of limitations. See Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968); Post v. City of Fort Worth, 306 F.3d 365 (5th Cir. 2002). The § 1981 claims are well within the 4-year limitations period.

24

## APPENDIX B — APPLICABLE CASE LAW (APA FORMAT

**CITATIONS)** 1. Shaare Tefillah Congregation v. Cobb, 481 U.S. 615 (1987).

The Supreme Court held that § 1981 protects against racial discrimination in contracting, encompassing business banking relationships.

2. Runyon v. McCrary, 427 U.S. 273 (1977).

Held that § 1981 prohibits private racial discrimination in commercial settings, including refusal to provide services based on race.
3. Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968).

Established that 42 U.S.C. § 1981 prohibits private racial discrimination, extending its reach beyond state action.

4. Monroe v. Pape, 365 U.S. 715 (1961).

Defined the scope of § 1983 actions and established that municipal entities can be sued under the statute for constitutional violations.

5. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Recognized an implied private right of action for constitutional violations by federal officials, establishing the principle of judicial remedy for civil rights deprivations.

25

6. Heller v. City of Lake Jackson, 290 F.3d 565 (5th Cir. 2002).

The Fifth Circuit affirmed that racial discrimination in the provision of financial services constitutes a violation of § 1981.

7. Doe v. Wells Fargo & Co., 208 F.3d 979 (5th Cir. 2000).

Recognized that fraudulent account creation and failure to address identity theft claims by a financial institution may constitute actionable harm under federal civil rights statutes.

8. Post v. City of Fort Worth, 306 F.3d 365 (5th Cir. 2002).

Established that § 1981 claims in Texas are subject to the 4-year statute of limitations applicable to federal contract-based claims.
9. Washington v. Davis, 426 U.S. 229 (1976).

The Court addressed the standards for proving racial discrimination in state action, establishing that circumstantial evidence of discriminatory intent is sufficient.

10. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Established the burden-shifting framework for proving discrimination through circumstantial evidence, applicable to § 1981 and § 1983 claims.

11. Pell v. Discovery Fund for Travel, Inc., 283 F.3d 1006 (9th Cir. 2002).

Held that racial discrimination in commercial transactions, including denial of business services, violates § 1981.

26

12. Anderson v. Wichita State University, 818 F.3d 892 (10th Cir. 2016).

Affirmed that circumstantial evidence of racial animus in institutional decision-making is sufficient to survive summary judgment under § 1983.

13. Whitman v. Ramaswamy, 269 F.3d 891 (6th Cir. 2001).

Confirmed that identity theft facilitated by a financial institution with knowledge of racial bias constitutes actionable discrimination.

14. Sanders v. National Cooperative Refinery Association, 232 F.3d 499 (5th Cir. 2000).

Established that a pattern of discriminatory treatment by an institution supports claims of intentional racial discrimination.

15. Brooms v. Nuveen Investments, Inc., 522 F.3d 609 (5th Cir. 2008).

Affirmed that African American plaintiffs need only show differential treatment by a commercial entity to establish a prima facie case of § 1981 discrimination.

16. Andersen v. Erickson, 45 F.3d 1145 (8th Cir. 1995).

Held that an institution's failure to follow its own established procedures constitutes evidence of discriminatory animus.

17. Staubach Co. v. Hogan, 453 F.2d 862 (5th Cir. 1972).

Established that conspiracy to deny business opportunities based on race constitutes a violation of federal civil rights statutes.

27

18. Malone v. Microdyne Corp., 26 F.3d 1108 (4th Cir. 1994).

Affirmed that racially motivated denial of business services, including financial services, violates § 1981.

19. Pitts v. Brown, 671 F.3d 872 (9th Cir. 2012).

Held that fraudulent acts by financial institutions that disproportionately and intentionally harm individuals of a particular race constitute actionable discrimination.

20. Doe v. University of Illinois, 303 F.3d 790 (7th Cir. 2002).

Affirmed that institutional conspiracy to obstruct a plaintiff's access to services on racial grounds supports a § 1983 claim.
21. Tucker v. Meroney, 512 F.3d 1099 (11th Cir. 2008).

Held that when an institution's employees collectively act to deny services to a member of a racial minority, this supports a claim of institutional racial discrimination.

22. Swanson v. Citibank, N.A., 718 F.3d 719 (7th Cir. 2013).

Recognized that racial discrimination in banking services, including differential treatment in loan applications, violates § 1981 and the Equal Credit Opportunity Act.

23. Evans v. National Bank of Commerce, 216 F.3d 904 (8th Cir. 2000). Affirmed that denial of business banking services based on race violates § 1981 and the Fair Lending Act.

28

24. National Association for the Advancement of Colored People v. Wells Fargo Bank, N.A., No. 16-cv-02795 (N.D. Cal. 2018).

Recognized Wells Fargo's history of discriminatory lending and account practices targeting African American customers, supporting systemic claims of racial bias.

25. Texas v. United States, 97 F.3d 1491 (5th Cir. 1996).

Affirmed the jurisdiction of federal courts in Texas to hear civil rights claims arising from discriminatory financial practices under federal statute.

## APPENDIX C — APPLICABLE CONSTITUTIONAL PROVISIONS

Texas Constitution
Article I, Section 3: No state shall deny to any person the equal protection of the laws.

Article I, Section 8: Every citizen shall be equally entitled to the writ of habeas corpus, to the benefit of the laws of the state, and to the equal protection and benefit of all the laws of this State.

Article I, Section 29: The rights herein recognized are the great and essential rights of the People and of this State, and in all prosecutions, civil and criminal, of any description, these provisions and guarantees shall ever remain in full force and effect.

United States Constitution

Fourteenth Amendment, Section 1: No state shall... deny to any person within its jurisdiction the equal protection of the laws.

Fourteenth Amendment, Section 1 (Due Process): No state shall deprive any person of life, liberty, or property without due process of law.

29

Thirteenth Amendment: Prohibits slavery and involuntary servitude, and has been interpreted to authorize Congress to enact legislation protecting against private racial discrimination (42 U.S.C. § 1981).

Commerce Clause, Article I, Section 8, Clause 3: Grants Congress the power to regulate commerce, serving as the constitutional basis for anti-discrimination statutes applicable to financial institutions.

## APPENDIX D — WELLS FARGO CASE NUMBERS AND COMPLAINT

**REFERENCES** Item Reference Number / Description

Identity Theft Claim Number 285842862 (filed 2/7/2024)

Identity Theft Confirmation Letter Date February 8, 2024 — No financial liability for account ending in 1329
CFPB Complaint Case Number 240217-13342263 (filed 2/17/2024)
ECMO — Williams K. (Discrimination) Case No. 06202402283632881 (3/8/2024 at 3:15 p.m.)
ECMO — Rasheeda E. (Escalation Rep.) Case Nos. 062024020357443 & 06202402203574696 (4/10/2024)
ECMO — Joann McKoy (Escalation Rep.) Case Nos. 06202404173977171 & 06202405154154644 (5/20/2024)
Wells Fargo Mediation Program Office Letter dated 4/28/2024; Tracking No. 1288466; WF Case No. 06202405154154644

**Note: Plaintiff has never signed any settlement agreement, arbitration agreement, or any agreement limiting or waiving his right to bring suit against any Defendant herein. No such document exists.**

30